**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JASON A. MUSKEY,                    :

                    Petitioner        :        CASE NO. 3:15-CR-0018

          v.                          :            (MANNION, D.J.)

UNITED STATES OF AMERICA      :

                    Respondent       :

## MEMORANDUM

Pending before the court is petitioner Jason A. Muskey's ("Muskey") *pro se* Motion to Vacate, Set Aside or Correct, his 132-month sentence to imprisonment filed on September 30, 2016. (Doc. 36). Muskey's motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims against his attorney, Jason Mattioli ("counsel"), for failing to object to the PSR regarding enhancements for violations of Securities law and number of victims, and for failing to properly argue for departures regarding family ties and voluntary disclosure. Upon the court's review of the record in this case, Muskey's motion, as well as the government's response, (Doc. 38), Muskey's motion is **DENIED**.

## I.      BACKGROUND

In May 2014, the United States Secret Service ("USSS"), along with the Office of Inspector General for the United States Postal Service ("USPS"),

1

commenced a criminal investigation regarding Muskey, d/b/a Muskey Financial Services ("MFS"). MFS was a business Muskey started in 2005 in Moosic, Pennsylvania, which provided a variety of financial services, including, IRA Annuities, mutual funds, college funding, mortgages, refinancing and stocks. During the investigation, federal agents discovered that from January 2007 through May 2014, Muskey had embezzled money from his clients. Specifically, as the government explains, (Doc. 38 at 2):

> The majority of the funds were invested with Muskey by clients who intended to roll the funds over into new investments. However, instead of investing the funds as per his clients' instructions, Muskey used the money for himself. A total of $2,243,897.17 was his intended loss. Muskey engaged in a Ponzi-like-scheme. In some cases, Muskey forged clients' signatures on withdrawal forms, providing him access to their investments funds. In some cases, Muskey had clients legitimately sign withdrawal forms under the false pretense that he was making legitimate transactions for the betterment of their accounts. This too provided him access to clients' accounts.

> Muskey often submitted signed withdrawal forms and other necessary paperwork to Ameritas Investment Corp. (AIC). AIC then remitted checks to [MFS] with the checks made payable to the victim client. Muskey forged the clients' signatures on the checks and would write "payable to [MFS]" under the signature. Muskey then took the checks to his bank and deposited them into his business account. If a particular client requested a return of their money, Muskey would replace the stolen funds with unrelated stolen funds from other victims so that no one would discover his fraud.

Muskey also forged checks and signatures, sent falsified quarterly statements to his clients, and prepared taxes for his clients so that he would be aware of any suspicions from the IRS. Further, Muskey was licensed by the Security and Exchange Commission and used his license to facilitate the

commission of his financial crimes.

Muskey used the embezzled funds from his clients to enjoy a lavish lifestyle with his family, including, buying several homes, several time shares, expensive family vacations, boats, cars and a large investment in a now defunct semi-professional football team. Eventually, Muskey's defrauded clients began to withdraw money from their accounts and started to pressure him for their statements causing his criminal scheme to "snowball[]."

The investigation also revealed that Muskey's scheme defrauded 26 victims, who were largely family members, former employees and close friends.

On February 10, 2015, a three-Count Information was filed charging Muskey with mail fraud, 18 U.S.C. §1341, money laundering, 18 U.S.C. §1956(a)(1)(A)(I), and aggravated identity theft, 18 U.S.C. §1028A(a)(1). The Information also contained a forfeiture allegation pursuant to 18 U.S.C. §981(a)(1) and 28 U.S.C. §2461(c). (Doc. 1).

A plea agreement was also filed on February 10, 2015, (Doc. 3), and Muskey plead guilty to the three charges contained in the Information on February 17, 2015, (Doc. 6). Under the terms of the plea agreement, (Doc. 3 at 8-9), Muskey explicitly stipulated and consented to the following:

> (a) the two-level enhancement found at U.S.S.G. §2S1.1(b)(2)(B) (§1956 violation) applies to the defendant's conduct;
> (b) the two-level enhancement found at U.S.S.G. §3A1.1 (vulnerable victim) applies to the defendant's conduct;
> (c) the two-level enhancement found at U.S.S.G. §3B1.3 (position of trust) applies to the defendant's conduct;

3

(d) for purposes of the sentencing guidelines, an additional 16 levels will be added pursuant to [U.S.S.G.] §2B1.1(b)(1) (the loss is greater than $1 million but less than $2.5 million);
(e) the two-level enhancement found at U.S.S.G. §2B1.1(b)(2) (more than 10 victims) applies to the defendant's conduct.

A Presentence Report ("PSR") was ordered by the court and prepared by the probation office. A draft PSR was distributed to the parties on June 17, 2015. (Doc. 14). The aforementioned enhancements, to which Muskey stipulated, were all included in the PSR.

On August 4, 2015, Muskey, through his counsel, filed a sentencing memorandum in response to the PSR in which he argued, despite the plea agreement, against the applicability of the two-level enhancement of U.S.S.G. §2B1.1(b)(2)(A)(I), regarding the number of victims, the two-level enhancement of U.S.S.G. §3A1.1, regarding vulnerable victim, and the sixteen-level enhancement of U.S.S.G. §2B1.1(b)(1), regarding the amount of loss. (Doc. 19). Subsequently, Muskey withdrew his objections to the sentencing enhancements.

The final PSR provided that Muskey's offense level was 30 with a criminal history category of I. (Doc. 39 at 5-6). Muskey's guideline range was 97-121 months imprisonment, with a statutory mandatory minimum consecutive term of 24 months imprisonment on Count 3.

The court conducted a sentencing hearing on October 30, 2015, (Doc. 39), and heard argument regarding Muskey's downward departure motion and his request for variance, and the court denied both requests. The court then

4

sentenced Muskey to an aggregate term of imprisonment of 132 months, namely, 108 months on Counts 1 and 2, to run concurrently, and 24 months on Count 3, to run consecutively to Counts 1 and 2. The court also ordered Muskey to be on three years of supervised release. (Doc. 32).

Muskey did not file a direct appeal regarding his judgment of conviction in accordance with the terms of his plea agreement. Muskey is currently serving his 132-month sentence at the Schuylkill Federal Prison Camp.

On September 30, 2016, Muskey filed, *pro se*, a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. §2255, seeking a reduction in his sentence. (Doc. 36). He did not file a brief in support. On October 31, 2016, the government filed a brief in opposition. (Doc. 38). Muskey did not file a reply.

## II.  STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* United States v. Bendolph, 409 F.3d 155, 165 n. 15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

"[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010)(citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D.Pa. Jan. 7, 2008)(quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013)(citation omitted). Muskey's instant claims fall within the purview of §2255 since they challenge the validity of his October 30, 2015 sentence. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the

claim on direct appeal.")(citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

## III.   DISCUSSION

In his §2255 Motion for Relief, (Doc. 36), Muskey requests the court to vacate his judgment of conviction and sentence entered on October 30, 2015. (Doc. 32). He bases his request on four claims of ineffective assistance of counsel. Specifically, Muskey asserts the following grounds in his motion: 1) counsel's failure to object to the PSR regarding the inclusion of the 4-level

8

enhancement found at U.S.S.G. §2B1.1(b)(19)(A) (violations of Securities Law); 2) counsel's failure to sufficiently argue against the PSR's inclusion of the 2-level enhancement found at U.S.S.G. §2B1.1(b)(2)(A)(I) (number of victims); 3) counsel's failure to effectively argue for a departure pursuant to U.S.S.G. §5H1.6 (extraordinary family ties and responsibilities); and 4) counsel's ineffective argument for a departure pursuant to U.S.S.G. §5K2.16 (voluntary disclosure). The court analyzes these claims using the two-pronged approach prescribed in *Strickland*.

The court will now discuss Muskey's claims seriatim.

### 1.    Securities Law Enhancement

The court must first determine whether Muskey has overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. No doubt, the key to a knowing and voluntary guilty plea is the effective assistance of competent counsel. See Boyd v. Waymart, 579 F.3d 330, 349 (3d Cir. 2009)(citations omitted). Moreover, "[w]here defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." U.S. v. Otero, 502 F.3d 331, 336 (3d Cir. 2007)(citation omitted). Muskey's first claim is that after his counsel negotiated a plea agreement with the government and before his sentencing the government added a "4-point SEC enchantment" which was not part of the plea deal, and that his counsel failed to object to this late addition of his deal.

9

Muskey states that as a result of this unilateral change to his plea deal, he received a net two point enhancement which caused his sentence to be longer.

The court finds that the PSR correctly added the 4-level enhancement pursuant to U.S.S.G. §2B1.1(b)(19)(A) since Muskey was undisputedly licensed by the SEC and he used his license in the commission of the instant crimes. "Under the Guidelines, a four-level increase of the base offense level is applied when the offense involves 'a violation of securities law and, at the time of the offense, the defendant was ... a registered broker or dealer, or a person associated with a broker or dealer.'" U.S. v. Elvidge, 619 Fed.Appx. 913, 915 (11th Cir. 2015)(quoting U.S.S.G. §2B1.1(b)(19)(A)). "The Guidelines define 'securities law', as:

> 18 U.S.C. §§1348, 1350, and the provisions of law referred to in section 3(a)(47) of the Securities Exchange Act of 1934 ... includ[ing] the rules, regulations, and orders issued by the Securities and Exchange Commission pursuant to the provisions of law referred to in such section.

Elvidge, 619 Fed.Appx. at 915 (quoting U.S.S.G., §2B1.1, comment. (n.15(A))).

"A defendant need not be convicted under securities law in order for the enhancement to apply" and, "it is sufficient for a defendant to be convicted under a general fraud statute if the underlying conduct violated securities law, as defined by the guidelines." U.S. v. Elvidge, 619 Fed.Appx. at 915 (citing §2B1.1, comment. (n.15(B))). Muskey alleges that prior to his sentencing the

government filed a motion to add the four-level securities law enhancement. As such, "the government had the burden of establishing that the guideline applied by a preponderance of the evidence." Id. (citation omitted).

As the government states in its brief, (Doc. 38 at 9):

Muskey [] was licensed by the [SEC] for the entire time charged in the Information. His business was financial planning and he dealt with securities on a daily basis. His SEC license not only facilitated his crimes, it was necessary for him to carry out his crimes. More importantly, in the commission of his crimes, Muskey violated multiple sections of multiple securities laws, including 17 C.F.R. §240.10b-5.

In his §2255 motion, Muskey fails to argue that his conduct did not violate securities law. The government in its brief, (Doc. 38 at 10-11), explains how Muskey's conduct violated the anti-fraud rule of the Securities and Exchange Act of 1934, 17 C.F.R. §240.10b-5. "Rule 10b–5 [] provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
"(a) To employ any device, scheme, or artifice to defraud,
"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
"in connection with the purchase or sale of any security."

In re Parmalat Securities Litigation, 376 F.Supp.2d 472, 490-91 (S.D.N.Y. 2005)(quoting 17 C.F.R. §240.10b-5).

As described above, Muskey's offenses involved stealing money from the brokerage accounts of his clients, to wit: he forged his clients' signatures

11

on withdrawal forms and duped his clients into signing the forms under false pretenses; he sent fraudulent documents to investment groups; he forged his clients' signatures on checks from investment groups; and he attempted to replace stolen funds from existing clients with the funds from new clients. Muskey's conduct violated Rule 10b-5, including, a claim based on a misrepresentation or omission under Rule 10b-5(b). Id. at 491. Thus, Muskey clearly qualified for the four-level enhancement and the government met its burden since he was accessing his clients' money as a broker and then embezzled their money and used it for his own selfish purposes for himself and his family.

As such, Muskey's counsel was not ineffective for failing to object to the four-level enhancement under §2B1.1(19)(A) since it clearly applied. *See* U.S. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)(Third Circuit held that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.")(citations omitted); U.S. v. Bui, 795 F.3d 363,366-67 (3d Cir. 2015).

## 2.   Number of Victims

Muskey alleges that he was given a two-point enhancement for having ten or more victims in his PSR and that his counsel advised him not to object to this departure because if he did, it would "anger[] [his] prosecutor and she would pursue an aggravated versus guideline sentence." (Doc. 36 at 5). Muskey states that he followed his counsel's advice and that his counsel was

ineffective for giving him this "terrible advice" which cost him an additional two points and lengthened his sentence. Thus, Muskey claims that his counsel was ineffective for failing to object to the two-level enhancement found at U.S.S.G. §2B1.1(b)(2)(A)(I) regarding the number of victims.

The number-of-victims enhancement clearly applied to Muskey's sentence. As the government points out, (Doc. 38 at 12), "the PSR identified at least 26 victims in this case" and, despite the fact that several were reimbursed by AIC before sentencing, it is not disputed that they still suffered related losses. While Muskey contended that the only victim was AIC, this contention was completely meritless.

The government states that on November 1, 2009 "the Sentencing Commission expanded the definition of victim to make the question of reimbursement immaterial in a case involving means of identification." (Id.). Indeed, the Third Circuit in U.S. v. Smith, 751 F.3d 107, 121 (3d Cir. 2014), stated, "[q]uite plainly, the victim enhancement under §2B1.1(b)(2) is not an enhancement based on the use of a 'means of identification'; it is an enhancement based on the number of victims." *see also* U.S. v. Manatau, 647 F.3d 1048, 1057 n.4 (10th Cir. 2011)("[T]he number of victims is not [ ] an offense characteristic [regarding "the transfer, possession, or use of a means of identification"], and so the guidelines don't bar a separate enhancement based on [the number of victims].")(citations omitted).

The government succinctly summarizes why the number-of-victims

13

enhancement was applicable to Muskey's sentence, (Doc. 38 at 13), and states:

> [Muskey's] victims numbered 26 and included every individual whose means of identification he unlawfully used in his scheme to steal their money. For each victim, Muskey unlawfully used names and/or social security numbers and/or dates of birth and/or financial account numbers, as well as other personal identifiers, which qualified as a "means of identification" as that term is defined in 18 U.S.C. §1028(d)(7). The same was evidenced by the documents Muskey personally created. Both Muskey and his counsel possessed those documents. In fact, Muskey admitted to the underlying conduct involved in the scheme to defraud when he entered his guilty pleas on February 17, 2015.

Thus, Muskey's counsel was not ineffective for failing to object to the two-level number-of-victims enhancement under §2B1.1(b)(2)(A)(I) since it clearly applied and it would have been frivolous to raise such an objection. *See* Sanders, 165 F.3d at 253.

### 3.   Family Ties and Responsibilities Departure

Muskey claims that his counsel was ineffective for failing to properly argue that he was entitled to a downward departure for his sentence under U.S.S.G. §5H1.6 due to his wife's cancer (lymphoma) and his vital role to his family and three children. (Doc. 36 at 6-7). He states that in the motion his counsel filed seeking the departure, (Doc. 28), his counsel cited to a case which was decided against his position, namely, U.S. v. Sweeting, 213 F.3d 95 (3d Cir. 2000). Muskey states that "I believe that my attorney was blinded and obsessed about quoting [the *Sweeting*] case as he represented the woman in the case on other legal matters but not this case [ ]" and because

14

his attorney had the woman set up to testify at his sentencing but had her submit a letter to the court instead.

Muskey completely misconstrues why his counsel cited the *Sweeting* case. His counsel cited *Sweeting* to explain when family circumstances can support a downward departure in the discretion of the sentencing court. His counsel then cited to cases in which the courts granted the defendants' motions for downward departures under §5H1.6. Muskey's counsel also called witnesses at Muskey's sentencing, including his wife (Tiana), his mother (Lynn Muskey) and his father-in-law (Joe Valencia), who attested to how Muskey was needed by his family, how is presence at home was "invaluable" and how close he was to them. (Doc. 39 at 40-54).

The Third Circuit has held that the district court maintained the discretion to grant a downward departure for extraordinary family circumstances and that it was within the discretion of the district court to evaluate the applicable factors "in the first instance." *See* U.S. v. Dominguez, 296 F.3d 192 (3d Cir. 2002).[1] In fact, the Third Circuit in *Sweeting* "held that a District Court cannot grant a downward departure based principally on generic concerns regarding breaking up families" and that "the decision to reduce a defendant's sentence based upon family circumstances turns on the

---

[1]In the sentencing memorandum Muskey's counsel filed, (Doc. 28), he cited to U.S. v. Dominguez, 296 F.3d 192 (3d Cir. 2002), showing that he was well aware of the appropriate standard regarding a downward departure request under U.S.S.G. §5H1.6.

particular facts of each case." Id. at 196-97. Also, "the presence of a dependent with special needs may not in itself be enough to justify a downward departure, and the District Court should look to the degree of those special needs and the replaceability of the defendant's contribution to meeting them." Id. at 197. The Third Circuit instructed "that factors such as the need for deterrence, incapacitation, just punishment, and rehabilitation should play a significant role in the District Court's analysis [when considering family circumstances for the purposes of departures]." Id. at 199.

At sentencing, the court did consider the impact of Muskey's family circumstances as well as the other available sources of meeting those needs in regard to the traditional purposes of sentencing. (Doc. 39 at 62-64). The court recognized under Third Circuit precedent it had discretion to grant downward departures under §5H1.6, and found that even though the circumstances in this case were unfortunate, they did not qualify as "extraordinary" and, indicated that such departures are only granted in exceptional and rare cases. Muskey's counsel did in fact strenuously implore the court to consider the potential harm to Muskey's family members, which he clearly knew constituted a reason for a downward departure. However, the court found that the traditional purposes of sentencing, i.e.,"deterrence, incapacitation, just punishment and rehabilitation", id. at 198, outweighed Muskey's family circumstances in light of the great financial harm he inflicted on his many victims, including other family members as well as friends, and

would only be satisfied by denying the departure and by the ultimate 132-month prison sentence.

Therefore, Muskey's counsel was not ineffective since he did properly and effectively argue that Muskey was entitled to a downward departure under U.S.S.G. §5H1.6. Counsel simply cannot be deemed ineffective for failing to prevail on a well-argued and well-supported departure motion.

### 4.    Voluntary Disclosure Departure

Muskey claims that his counsel was ineffective for failing to properly argue in his motion, (Doc. 28), that he was entitled to a downward departure for his sentence for voluntary disclosure under U.S.S.G. §5K2.16 "due to extreme cooperation on [his] case." (Doc. 36 at 8-10). Muskey states that, "I believe my motion for downward departure was valid because I had ineffective counsel in showing I was not going to be caught in the imminent future." (Id. at 10). He raises three points in support of his contention but none are persuasive. First, he states that his counsel used the wrong standard and incorrectly argued that he (Muskey) was so smart and clever that he would never get caught when the standard was whether he was in the process or expected to be imminently caught. Second, he states that his counsel was ineffective in countering the contention of the government, which was supported by Secret Service Agent Michael Zappel's testimony, that Muskey turned himself in since his business was slowing and he had no choice. Third, he states that his counsel was ineffective in countering Zappel's testimony

that "within days of our first meeting a client called [the Secret Service] with suspicions of fraud as further proof I was to be caught soon."

The court finds that despite the alleged shortcomings Muskey assigns to his counsel regarding his request for a departure for voluntary disclosure, he completely fails to show that his sentence would have been any different even if his counsel had argued as he suggests. The Supreme Court cautions the court should not credit the "presentation of conclusory allegations unsupported by specifics . . . [or] . . . contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). In order to determine whether a defendant did, in fact, suffer actual prejudice: "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (1999). The court must consider the "totality of the evidence" so as to "determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." Id. (citations omitted).

Moreover, assuming arguendo that Muskey's counsel argued the stated points, the court still would have denied his request for a departure for voluntary disclosure. As the government, (Doc. 38 at 16), states:

> Agent Zappel offered testimony concerning the initiation of the investigation into Muskey's crimes. He confirmed the voluntary notification of criminal conduct by Muskey. [Doc. 39] (N.T. at 17). However, Agent Zappel also testified about several examples found throughout his investigation indicating that many of Muskey's victims were growing increasingly suspicious of his

activities and on the verge of notifying either law enforcement, or some other governing body within the financial infrastructure of AIC. (N.T., pgs. 18-21). Agent Zappel testified and identified other victims who contacted the FBI within days of Muskey's disclosure with no knowledge that Muskey's crimes were already under investigation. (N.T. at 19). Agent Zappel's testimony, subjected to cross-examination by Muskey's counsel (N.T. 22–24), was damming to Muskey's claim that but for his voluntary disclosure, his crimes would never have been discovered.

The court in U.S. v. Castaldi, 743 F.3d 589, 592 (7th Cir. 2014), explained, "[w]hen investors were paid interest or return of their principal, the payments were made with only the later investments of new investors, so this was a Ponzi scheme" and, that "[s]uch a scheme can work for a while, but it will inevitably collapse when the supply of new investors dries up or enough earlier investors ask for their money back." (internal citations omitted). The court finds that Muskey's late disclosure of his Ponzi scheme and crimes, which devastated the financial security of his clients who bestowed their trust in him, when, according to Zappel's undisputed testimony, discovery became virtually inevitable did not entitle Muskey to a departure for voluntary disclosure under U.S.S.G. §5K2.16. This conclusion simply would not have changed even if Muskey's counsel argued all three points Muskey raises in his present motion. Muskey's conclusory claims do not meet the burden of demonstrating the unreasonableness of his counsel's representation, and cannot serve as the basis for the relief he requests.

## IV. EVIDENTIARY HEARING

Although Muskey does not specifically request an evidentiary hearing, (Doc. 36 at 14), and he only states that he requests court appointed counsel "if [his] motion is accepted for hearing", the court will address the issue because the government raises it in its brief. (Doc. 38 at 16-17). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)(The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.")(citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record.") Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)). A review of the motion and the government's brief, the law, and the claims make it clear that Muskey's allegations are wholly unsupported by the record. Muskey only presents a series of subjective perceptions of the facts as well as unsubstantiated assertions regarding the alleged ineffectiveness of his counsel. Therefore, the court finds no reason to hold an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Muskey has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.


## VI. CONCLUSION

Based on the foregoing, the court finds Muskey fails to show his counsel was ineffective or deficient in any way. Therefore, the court **DENIES** Muskey's §2255 Motion. (Doc. 36). An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: November 22, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2015 CRIMINAL MEMORANDA\15-18-01.wpd