**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | 3:15-CR-18 |
| v. : | |
| : | (JUDGE MANNION) |
| **JASON A. MUSKEY,** : | |
| **Defendant** : | |

## MEMORANDUM

**I.   BACKGROUND**

On April 23, 2020, defendant Jason A. Muskey filed, *pro se*, an Emergency Motion for Reduction of Sentence under 18 U.S.C. §3582(c)(1)(A) and request for immediate transfer to home confinement related to his 132-month sentence, due to the COVID-19 pandemic. (Doc. 52).[1] In particular, Muskey seeks the court to immediately release him from confinement in prison at FPC-Schuylkill, Low Security Camp, located in Minersville, Pennsylvania, to home confinement at the house he and his wife own in Lackawanna County, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if he does, based on his alleged chronic

---

[1] The court notes that Muskey cites to §3582(c)(1)(A) as the statutory basis for his motion, and he styles the caption on his motion with him as the petitioner and the United States as the respondent. However, Muskey also states in his motion that it is "not intended to be a motion for 'compassionate release'" unless the court liberally construes it as such.

1

medical conditions, he will be at greater risk to suffer more severe consequences. The court construes Muskey's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

Muskey also filed his Affidavit in support of his motion averring that he has served 54 months of his prison sentence (less than 50%) and that he has "several severe and chronic health conditions such as high blood pressure, hypertension, high cholesterol, obesity, and type-2 diabetes" which compromise his immune system and make him more susceptible to viruses. He also alleges that if contracts the COVID-19 virus "it [would] likely [be] a death sentence" due to his alleged underlying conditions. (Doc. 53).

On May 4, 2020, Muskey filed a supplement to his motion with a copy of FCI-Schuylkill Warden Scott Finley's April 14, 2020 response denying his (Muskey's) April 3, 2020 request for Compassionate Release/Reduction in sentence based on extraordinary or compelling circumstances due to his health conditions and the COVID-19 pandemic, pursuant to BOP Program Statement 5050.50. Muskey also included his proposed release plan in his supplement. (Doc. 54).

On May 6, 2020, the court directed the government to respond to Muskey's motion and to include in its response Muskey's medical condition and the measures which the prison has taken to comply with the Center for Disease Control (CDC) guidelines regarding the COVID-19 pandemic. (Doc. 55).

2

On May 14, 2020, Muskey filed a notice indicating to the court that he will file a reply brief when the government files its response to his motion. (Doc. 56).

On May 21, 2020, the government filed its brief in opposition to Muskey's motion with attached Exs. A & B. (Doc. 57). Exhibit A is another copy of Warden Finley's April 14, 2020 response denying Muskey's April 3, 2020 request for Compassionate Release/Reduction in sentence. (Doc. 57-1). Exhibit B is a copy of the BOP notes for medical review regarding inmate requests for compassionate release/reduction in sentence as well a copy of the reduction in sentence medical review that was completed by Dr. Mace-Leibson, Clinical Director at the prison, on April 6, 2020 in response to Muskey's request. (Doc. 57-2). The medical review reveals that Muskey has diabetes and hypertension, and that both conditions are controlled by medications. Also, Muskey's medical condition was noted to be "stable" and his prognosis was "good."

On May 22, 2020, Muskey filed his reply brief, styled "Urgent Update", in support of his motion. (Doc. 58). In it, he alleges that the inmates at FPC-Schuylkill were advised that an inmate in the medium security facility of the prison tested positive for COVID-19 virus and that the test result was sent to the CDC for confirmation. Muskey alleges that since the first case of the virus is now in the medium security facility it will spread quickly to the other facilities of the prison and, he attached a copy of a March 16, 2020 report by Dr.

Beyrer regarding COVID-19, including the risks in general in prisons, to support his claim.

On June 3, 2020, Muskey filed another reply brief with his Affidavit attached and Exhibits. (Docs. 59, 59-1 and 59-2). Muskey avers in his Affidavit that he obtained copies of his BOP medical records to show that his underling medical conditions render him more of a risk to complications if he contracted the COVID-19 virus and that "[he] will not be expected to recover." He also avers that he cannot self-isolate and self-care in the prison camp setting to comply with the CDC's recommendations. As such, Muskey avers that he is "afraid for his life." Muskey also submitted his BOP medical records he considers relevant to his instant motion. (Doc. 59-2).

On June 24, 2020, Muskey filed a supplement to his reply brief with attached Exhibits. (Doc. 60). His first Exhibit is an alleged copy of a June 10, 2020 email response from the Health Services Administration ("HSA") at FCI Schuylkill in response to an email from an inmate asking if he could get tested for COVID-19 despite the fact that he had no symptoms. The HSA allegedly replied that "Currently, we are not performing COVID-19 testing for asymptomatic patients." This email does not demonstrate that there is no testing for COVID-19 being performed at the prison, as Muskey asserts, and it does not undercut the government's representation that there are no confirmed positive cases at the prison because there is no testing being performed as Muskey argues. Rather, it simply indicates that if an inmate has no symptoms of the virus, HSA is not testing those inmates. This email

4

does not controvert the fact that as of June 25, 2020, there are no confirmed positive cases of COVID-19 among inmates or staff as FCI Schuylkill, including the camp where Muskey is confined.

Nor does Muskey's second Exhibit establish that he is entitled to be released to home confinement, namely, an alleged copy of a newspaper article stating that a District Court Judge in Albany, New York, released an inmate from FPC Schuylkill due to the COVID-19 pandemic and found that the exhaustion requirement under 18 U.S.C. §3582(c)(1)(A)(i) could be waived. *See* United States v. Benjamin Roundtree, ---F.Supp.3d---, 2020 WL 2610923 (N.D.N.Y. May 18, 2020). Roundtree is not binding precedent on this court and is not the law within this circuit. This court has found that the exhaustion requirement is mandatory and, that if a defendant, like Muskey, who submits a request for compassionate release to the Warden and receives a timely response, files a motion with the court before fully exhausting his administrative remedies with the BOP, this court is without jurisdiction to entertain the motion.

After considering Muskey's motion, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust all of his BOP administrative remedies under §3582(c)(1)(A)(i). To the extent Muskey is seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not

5

have authority to grant his request for relief and order the BOP to release him to home confinement.[2]

## II. DISCUSSION[3]

In his present motion, (Doc. 52), and Affidavit, (Doc. 53), Muskey seeks his immediate transfer from FPC-Schuylkill and requests the court to allow him to serve the remainder of his prison sentence in home confinement stating that he is at a higher risk if he contracts the COVID-19 virus based upon his chronic medical conditions, including hypertension, obesity and type 2 diabetes. He also alleges that due to his medical conditions his immune system is compromised making him more susceptible to contracting viruses. Further, Muskey points out that he has served 54 months of his sentence and he fears that if he does contract the COVID-19 virus "it is nearly

---

[2]Since Muskey is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act in addition to a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

[3]Since the court stated the complete background of this case in its November 22, 2016 Memorandum denying Muskey's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255, (Doc. 40), and since the government states the background in its instant brief, (Doc. 57 at 1-4), the court does not repeat it herein. Suffice to say that Muskey is currently serving a 132-month prison sentence that was imposed on October 30, 2015, after he pled guilty to mail fraud, 18 U.S.C. §1341, money laundering, 18 U.S.C. §1956(a)(1)(A)(i), and aggravated identity theft, 18 U.S.C. §1028A(a)(1). Specifically, the court then sentenced Muskey to an aggregate term of imprisonment of 132 months, namely, 108 months on Counts 1 and 2, to run concurrently, and 24 months on Count 3, to run consecutively to Counts 1 and 2. The court also ordered Muskey to be on three years of supervised release.


or likely a death sentence" due to his medical conditions. Muskey also alleges that based on the open dormitory type setting in the prison's camp, as well as many common areas, social distancing cannot be practiced and, that the staff has close daily interactions with the inmates without wearing protective gear. He also complains about the conditions in the camp and the alleged lack of cleaning supplies and disinfectants. As such, Muskey contends that in the "petri dish" camp setting if the COVID-19 virus is introduced, it will spread quickly.

Muskey also references a March 26, 2020 Memorandum from U.S. Attorney General William Barr regarding guidelines to the BOP for the implementation of the CARES Act, §12003(b)(2), and directing the BOP to identify suitable inmates for home confinement with COVID-19 risk factors. Thus, liberally construed, he can be deemed as claiming that he is the type of inmate who meets Barr's criteria for release to home confinement under the Act due to the COVID-19 pandemic.

Muskey concludes that based on the alleged conditions of the FPC-Schuylkill low security camp and his medical conditions an "extraordinary and compelling" situation exists in his case for the court to direct the BOP to immediately place him in home confinement to complete the service of his prison sentence.

In his reply brief, (Doc. 59), Muskey states that his motion is also one for a reduction of sentence to time served and for placement on supervised release.

As relief, Muskey requests the court to immediately release him from confinement at FPC-Schuylkill, where there are no confirmed positive cases of COVID-19 as of June 25, 2020, to home confinement for service of the remainder of his sentence.[4] Although Muskey now alleges that one inmate in the medium security facility of the prison recently tested positive, this has not been confirmed.

As this court recently stated in Cordaro v. Finley, 2020 WL 2084960, *3 (M.D.Pa. April 30, 2020), "[n]otwithstanding the myriad of alleged unsafe and unsanitary conditions at FCI-Schuylkill camp, neither [Muskey] nor any other inmate at the camp have contracted the COVID-19 virus and, to date [June 25, 2020], the prison 'has no [confirmed] cases of inmates or staff who have tested positive for the COVID-19 corona virus."[5]

---

[4] The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. In Lackawanna County, where Muskey wishes to be placed on home confinement with his family, as of June 25, 2020, it has 1638 confirmed COVID-19 cases and 201 deaths. *See* Pa. Dept. of Health website. Thus, as the government points out, (Doc. 57 at 22), as of [June 25, 2020], "[i]n a facility population of at least 1,130 inmates, no staff member or inmate has tested positive for COVID-19. There is simply no reason to believe, nor has Muskey established, that he would be less vulnerable to COVID-19 if released into an outside community currently ravaged by the pandemic."

[5] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro, *supra* (citing Doc. 544 at 15-18), and since many of the measures are stated in the government's brief, (Doc. 57 at 4-11), as well the BOP's websites, they are not repeated herein. *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

Initially, Muskey stated that he filed an administrative remedy by requesting the warden *via* the prison's internal email system, pursuant to BOP 5050.50, for release to home confinement due to the COVID-19 virus, and that he received an email reply from Warden Finley to see the "unit team." (Doc. 52 at 1-2). However, Muskey averred that before he submitted his email request to the warden, Unit Team Manager Raup allegedly told him "not to file" any administrative remedy requests for release since they would all be denied because all such decisions were being made in Washington, D.C., and to be "patient." (Doc. 52 at 1-2).

As such, Muskey initially alleged that attempting to file administrative remedies would be futile and that the COVID-19 virus along with his medical conditions present an extraordinary situation in which exhaustion should be excused.

However, with his supplement to his motion, (Doc. 54), Muskey included a copy of Warden Finley's April 14, 2020 denial of his April 3, 2020 request for Compassionate Release/Reduction in sentence due to COVID-19 and, he contended that this shows he completed the BOP administrative remedy process. (Doc. 54 at -34).

In his reply brief, Muskey contends that he has "exhausted his [administrative] remedies as he received a denial from the warden and 30 days has now passed." Muskey incorrectly understands the exhaustion requirement. In short, as discussed below, Muskey did not exhaust all of his BOP administrative remedies since he has not yet appealed the warden's

denial of his request as required. *See* United States v. Early, 2020 WL 2572276 (W.D.Pa. May 21, 2020).

In its brief, the government points out that "a defendant seeking a reduction in his term of imprisonment under the First Step Act has the burden of demonstrating both (1) that he has satisfied the procedural prerequisites for judicial review and (2) that extraordinary and compelling reasons exist that would justify compassionate release." Further, it states that "[a] defendant must satisfy the procedural requirements for review before the Court may consider whether extraordinary and compelling reasons would warrant a reduction in his sentence." (Doc. 57 at 12) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). The government, (Id. at 13), then represents:

> [it] has confirmed with FCI Schuylkill that on April 14, 2020, Muskey was reviewed for Compassionate Release/Reduction in sentence and was denied. Muskey's denial was based, in part, on his inability to demonstrate extraordinary or compelling circumstances. (See [Doc. 57-1] Exhibit A, Warden's Response). It was determined that Muskey is able to independently adapt to activities of daily living and is able to perform self-maintenance activities in a correctional environment. Muskey did not appeal the Warden's decision dated April 14, 2020. Instead, he filed the instant motion with this Court.

In his reply brief, Musky does not challenge the government's contention that he failed to appeal the Warden's denial of his request. Rather, he mistakenly asserts that he exhausted his administrative remedies since the warden denied his request over 30 days ago. (Doc. 59).

10

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Recently, in Early, 2020 WL 2572276, *3, the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, *id.*, also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id.* (quoting Raia, 954 F.3d at 597). "The

BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Also, Muskey, just like the defendant in the Early case, *id.* at *2, "submits that he has exhausted his administrative remedies simply because '[t]hirty days has expired since the warden received defendant's request" and because the warden then formally denied defendant's request within the 30-day time frame provided for in the First Step Act.

The court in Early, *id.* at *3, then explained:

> Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* United States v. Nance, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, United States v. Bolino, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, United States v. Bevans-Silva, 2020 WL 2475079 (S.D. Ga. May 13, 2020); United States v. Samuels, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); United States v. McCallister, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); United States v. Rodriguez, ––– F.Supp.3d –––, –––, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); United States v. Mattingley, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); United States v. Keith, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5,

>
> 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In the present case, just as in Early, *id*., "Warden [Finley] responded to [Muskey's] [April 3, 2020] request within 30 days of receipt [i.e., on April 14, 2020]." Thus, Muskey "is obligated to complete the administrative appeal process", and the court finds that "[he] has failed to exhaust his administrative remedies." *Id.*

It is clear that Muskey has not exhausted all of his BOP administrative remedies prior to his instant filing. Since Finley timely denied Muskey's request for release to home confinement on April 14, 2020, Muskey must still file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Muskey must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *Id. See also* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

As in Early and Cordaro, 2020 WL 2084960, *4, Muskey has not exhausted all of his administrative remedies available with the BOP regarding his motion, therefore the court will dismiss it without prejudice. *See* Furando v. Ortiz, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed

without prejudice the petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high risk if contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.); Smith, 2020 WL 2063417, *2 ("Absent a showing of exhaustion, this Court cannot rule on [defendant's] request for compassionate release.") (collecting cases finding that "a failure to satisfy 18 U.S.C. §3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"). *See also* United States v. Bolze, --- F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tn. May 13, 2020) (court held that "the exhaustion requirement is a prerequisite to the court's exercise of its authority under §3582(c)(1)(A)", and "the Court lacks jurisdiction to reduce a term of imprisonment under §3582(c)(1)(A) if defendant has not exhausted his administrative remedies …."); United States v. Blevins, 2020 WL 3260098, *2 (S.D. Miss. June 16, 2020) ("The statute [18 U.S.C. §3582(c)(1)(A)] does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise.") (citing United States v. Koons, 2020 WL 1940570, at *3 (W.D.La. Apr. 21, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify

his sentence under the statute."); United States v. Martin, 2020 WL 3065302, at *3 (S.D.Miss. June. 9, 2020)) (district court criminal nos. omitted).

The court also finds that, as in Cordaro, 2020 WL 2084960, *5, "[t]he circumstances of [Muskey's] case fit squarely within the purposes of the exhaustion requirement." (citation omitted). *See also* Early, 2020 WL 2572276, *4 ("The fact remains, however, that Defendant must exhaust his administrative remedies before he may seek relief in this Court.").

The court finds that even had the exceptions to the exhaustion requirement applied in this case, and they do not since "exhaustion of [defendant's] administrative remedies is mandatory", Early, 2020 WL 2572276, *3, none exist especially since there are no confirmed cases of the COVID-19 virus at FCI-Schuylkill, including the camp, as of June 25, 2020.

Even though Muskey contends that there are "extraordinary and compelling" reasons justifying his compassionate release under §3582(c)(1)(A)(i), he has not been exposed to the COVID-19 virus at FPC-Schuylkill, low security camp, nor has he controverted, with any evidence besides their own averments, the substantial steps identified in the government's brief that the BOP is taking to protect the health and safety of both inmates and staff at the camp as well as all of the federal prisons.

Thus, even though Muskey presented a request for compassionate release to Finley and it was denied, his motion must be dismissed for lack of jurisdiction since he has not exhausted all of his administrative remedies

15

under §3582(c)(1)(A). Here, Musky did not yet appeal Finley's April 14, 2020 denial of his request for compassionate release.

Thus, the court cannot address whether Muskey has demonstrated, as he alleges, that "extraordinary and compelling reasons" justify his compassionate release from prison since he has not exhausted his administrative remedies with the BOP as required.

Further, the court finds that Muskey does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* Zukerman, 2020 WL 1659880, *3. Rather, he merely speculates that he may be exposed to COVID-19 if he comes into contact with someone at the prison who has the virus and he speculates that based on his alleged conditions he would not likely recover if he did contract the COVID-19 virus. It must also be noted that Muskey does not allege that he has contracted COVID-19 and he has not suffered any medical consequences from the virus since the pandemic started in the United States. Nor does Muskey claim that anyone at the low security camp where he is confined has the virus.

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third

Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* See also United States v. Zywotko, 2020 WL 1492900, *2 (M.D.Fl. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13.") (citation omitted).

Finally, to the extent Muskey is deemed as also relying on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.[6] Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount

---

[6] *See* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

As this court recently stated in Cruz, 2020 WL 1904476, *4 and in Cordaro, 2020 WL 2084960, *7, "the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citing United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL

18

1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same).

### III. CONCLUSION

Based on the foregoing, Muskey's emergency motion for transfer to home confinement related to the COVID-19 pandemic, **(Doc. 52)**, considered as a motion for compassionate release, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Further, insofar as Muskey is challenging any decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 30, 2020**
15-18-03